IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHARON K. RICHMOND                                          PLAINTIFF

V.                              NO. 12-5012

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Sharon K. Richmond, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for supplemental security income (SSI) under the provisions

of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her application for SSI on May 27, 2009, alleging an inability

to work due to her "Annular tear at l5 and l6 and a crushed vertebrae L5."  (Tr. 141, 144).  An

administrative hearing was held on February 18, 2010, at which Plaintiff appeared with counsel

and testified.  (Tr. 24-56).

By written decision dated August 16, 2010, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe -

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner  Michael J. Astrue as the defendant in this suit.

degenerative disk disease of the lumbar spine.  (Tr. 14).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 15).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> Perform light work as defined in 20 CFR 416.967(b) except that she cannot climb ladders, ropes, and scaffolds, kneel, crouch, crawl, or perform overhead work.  The claimant can occasionally stoop, balance, and climb ramps and stairs.  She must avoid extreme cold.

(Tr. 15).  With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff could perform, such as fast food worker and production and assembly jobs, i.e., bottling line attendant; power screwdriver operator; and conveyor line baker.  (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on November 22, 2011.  (Tr. 1-4).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8, 10).

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.

-2-

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national

-3-

AO72A
(Rev. 8/82)

economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138,

1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Although Plaintiff broadly discusses a multitude of issues on appeal, the Court agrees

with Defendant that in essence, Plaintiff argues that: 1) the ALJ erred in not considering all of

Plaintiff's combined impairments; 2) the ALJ erred in determining Plaintiff's RFC; 3) the ALJ

failed to properly develop the record; and 4) the ALJ erred in his credibility findings.

### A.      Plaintiff's combined impairments:

In his decision, the ALJ set forth the fact that at step two, he must determine whether

Plaintiff had "a medically determinable impairment that is 'severe' or a combination of

impairments that is 'severe.'"  (Tr. 13).  He also stated that an impairment or combination of

impairments was "not severe" when medical and other evidence established only a slight

abnormality or a combination of slight abnormalities that would have no more than a minimal

effect on an individual's ability to work.  (Tr. 13).  The ALJ also stated that at step three, he must

determine whether the Plaintiff's "impairment or combination of impairments " meets or

medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 13).  This

language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.

See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011

(8th Cir. 2005).

In addition, the ALJ discussed why Plaintiff's alleged arthritis, emphysema, scoliosis, and

-4-

mild tendonitis were not severe:

> However, the medical evidence (Exhibits 1F, 2F, 5F, 6F, 12F, 13F, and 14F) does not demonstrate that those conditions have caused more than a minimal limitation in the claimant's ability to perform basic work activities. As a result those impairments are considered non-severe impairments.

(Tr. 14). The ALJ further addressed why Plaintiff's alleged depression did not constitute a medically determinable mental impairment. Although Plaintiff testified that she had suffered from depression all her life (Tr. 45), and that she had seen a psychiatrist when she "first found out that I had depression" (Tr. 42), the records do not indicate that she sought any mental health treatment by a mental health expert, and was only taking an anti-depressant off and on - on June 12, 2009, she was taking Lexapro, and on the date of hearing, she had been on a break from taking the anti-depressant, and just handled it on her own. (Tr. 40). The medical records do not reflect any mental health treatment for depression or any other mental impairment. Nor did Plaintiff allege any mental impairment in her application.

Based upon the foregoing, as well as the arguments set forth in Defendant's well-reasoned brief (Doc. 10 at pgs. 5-12), the Court finds there is substantial evidence to conclude that the ALJ considered the combined effects of Plaintiff's impairments.

**B.    RFC determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from

-5-

symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The

Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."

Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination

concerning a claimant's RFC must be supported by medical evidence that addresses the

claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir.

2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to

determine how those limitations affect his RFC."  Id.

In this case, the ALJ concluded that Plaintiff would be able to perform light work with

certain limitations.  (Tr. 15).  In making this determination, the ALJ considered all of the medical

records, the opinion evidence, as well as Plaintiff's description of her limitations.  (Tr. 15-17).

The ALJ had before him the reports of Dr. D. Luke Knox, of the Northwest Arkansas

Neurosurgery Clinic, who, on December 30, 2008, reported that he reviewed her MRI scan, and

could perceive no evidence of significant compressive pathology that would be remedial to

surgical decompression.  (Tr. 222).  He also noted that Plaintiff believed that she was somewhat

improved with physical therapy.  When Dr. Knox asked Plaintiff about returning to work, she

indicated that she had to be able to have no lifting restrictions, and Dr. Knox did not believe it

would be in her best interest at that point, since she would be required to lift up to 50 pounds at

a time.  (Tr. 222).  Dr. Knox indicated that he wanted Plaintiff to undergo a functional capacity

evaluation in order to review the six-month anniversary of her worker's compensation injury.

(Tr. 222).

On February 16, 2009, a Functional Capacity Evaluation (FCE) was performed by Doin

Dahlke, M.Ed., ATC/L, CFE (Certified Functional Evaluator), at Functional Testing Centers,

Inc.  (Tr. 275-276).  Mr. Dahlke found that Plaintiff gave an unreliable effort, and that the evaluation indicated that she did not put forth a consistent effort.  (Tr. 275).  He concluded that Plaintiff completed functional testing with unreliable results, and that overall, she demonstrated the ability to perform work "***at least*** at the LIGHT classification as defined by the US Dept. Of Labor's guidelines over the course of a normal workday."  (Tr. 276).  He further stated that Plaintiff's functional abilities remained unknown due to unreliable effort on her behalf.  (Tr. 276).

On February 25, 2009, when Plaintiff again saw Dr. Knox, after reviewing the functional evaluation, Dr. Knox concluded that from the standpoint of her MRI scan done on October 23, 2008, demonstrating a small annular tear at L4-5, Plaintiff would qualify for a 5% permanent partial disability to the body as a whole.  (Tr. 221).

On April 1, 2009, when Plaintiff saw Dr. Knox, he reported that he again reviewed her functional capacity evaluation defined by Mr. Dahlke.  (Tr. 220).  Neurologically, Dr. Knox indicated that he could pick up no evidence from her previous evaluation, and that he was unable to define any appropriate treatment options for Plaintiff.  (Tr. 220).  He continued:

> I do not believe there are any available avenues to pursue in hopes of helping her with her current pain syndrome.  In the face of her functional capacity evaluation, I am unable to define any appropriate treatment options for Mrs. Richmond.  I do not believe there are any available avenues to pursue in hopes of helping her with her current pain syndrome. In the face of her functional capacity evaluation, I would recommend that she go ahead and close out her claim.  I am unable to define any work restrictions due to the findings on her functional capacity evaluation.

(Tr. 220).  Thereafter, on July 8, 2009, Dr. David L. Hicks, a non-examining physician, completed a Physical RFC Assessment form, finding that Plaintiff would be able to perform light

-7-

work, with certain limitations.  (Tr. 315-322).  He commented that owing to the lumbar strain with annular tear, and considering Plaintiff's activities of daily living, as well as the functional capacity evaluation, Plaintiff would be able to perform light work with postural limitations.  (Tr. 322).

Plaintiff subsequently presented herself to Dr. Rodney T. Routsong, D.O., at The Neurosurgery Center Northwest, on September 3, 2009, complaining that her back hurt.  (Tr. 334).  He diagnosed her with lumbosacral sprain and lumbosacral somatic dysfunction.  (Tr. 334).  She next saw Dr. Routsong on November 16, 2009, when he found:  her gait to be normal; mild lower lumbar somatic dysfunction; and sensory testing for light touch, pin prick, vibration and temperature sense revealed mild decrease in vibratory sensation at both ankles and hyperpathia in both feet.  (Tr. 333).  He concluded that neurologically, Plaintiff remained unchanged and that he saw no sign of spinal nerve or cauda equina compression.  (Tr. 333).

On February 8, 2010, Plaintiff again saw Dr. Routsong in regard to low back pain and intermittent numbness in both feet.  (Tr. 332).  She told Dr. Routsong that she was "much improved."  (Tr. 332).  Her gait was normal, there was no unequal paresis in the four extremities, some mild numbness in the feet, straight leg raising and figure-four testing were negative, the deep tendon reflexes were absent in the four extremities, neck and truncal movements did not cause radicular or myelopathic findings, lower lumbar somatic dysfunction was noted on testing, and truncal movements did not cause radicular symptoms.  (Tr. 332).  Dr. Routsong found that neurologically, Plaintiff continued to demonstrate a mild peripheral neuropathy as well as mechanical low-back pain.  (Tr. 332).  Plaintiff was to continue on Neurontin, Flexeril, Mobic, and Darvocet.

AO72A
(Rev. 8/82)

The ALJ gave the opinion of Dr. Knox as well as the FCE report great weight because Dr. Knox was a treating physician, and because the tests in the FCE report contained objective measures regarding Plaintiff's abilities to perform basic work activities. (Tr. 17). The ALJ also gave Dr. Hick's opinion credit because it was consistent with the medical evidence as a whole. (Tr. 18). The Court believes the ALJ gave all of the medical opinions appropriate weight, and based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC findings.

### C.    Fully and Fairly Developing the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

Plaintiff alleges that the ALJ failed to order a general physical examination or further

develop the record to determine the extent and limiting effects of her pain.  She also alleges that the ALJ refused to investigate Plaintiff's alleged depression and anxiety, failing to procure a Psychiatric Review Technique, and a Mental Residual Functional Capacity Assessment or a psychiatric consultation.

The Court finds Plaintiff's argument to be without merit.  As indicated by Defendant, the record contains numerous physical findings by Plaintiff's treating neurosurgeons that directly describe her musculoskeletal and neurological status as fairly normal.  In addition, regarding Plaintiff's allegation of mental impairment, as stated earlier, the ALJ's finding that Plaintiff did not have a medically determinable mental impairment is substantially supported by the record. The Court finds that existing medical sources contain sufficient evidence for the ALJ to make his determination, and that substantial evidence supports the fact that the ALJ did not fail to fully and fairly develop the record.

**D.      Subjective Allegations of Pain**:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

AO72A
(Rev. 8/82)

2003).

The ALJ in the present case discussed Plaintiff's activities of daily living, as well as Plaintiff's testimony, and gave her testimony some credit. (Tr. 16-18). However, he believed the medical evidence did not fully support the allegations regarding the limiting effects of Plaintiff's impairments. (Tr. 16). He further found that the medical evidence and opinions showed that Plaintiff could perform light work with certain limitations, and that the limitations he set forth in the RFC took into account the limitations that were supported by the record. The Court agrees. In his RFC, the ALJ stated that Plaintiff could perform light work, but could not climb ladders, ropes, and scaffolds, kneel, crouch, crawl, or perform overhead work, and that she could occasionally stoop, balance, and climb ramps and stairs and must avoid extreme cold. (Tr. 15). The Court believes there is substantial evidence to support the fact that Plaintiff has the RFC to perform light work, with certain postural limitations.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 22nd day of February, 2013.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-11-